# COURT OF APPEALS.

JAMES F. DE PEYSTER and RICHMOND WHITMARSH, plaintiffs in error, vs. JOHN G. WINTER, defendant in error.

An action cannot be sustained by a plaintiff, for money had and received, upon a bill of exchange negotiated to the general agent of the plaintiff, without proving *affirmatively* that the money for which the bill was purchased, was the money of the plaintiff.

In the absence of such testimony it is the duty of the court to non-suit.

*Decided, June Term,* 1848.—This was an action of assumpsit brought by Winter against De Peyster and Whitmarsh, in the Superior Court of New York, in 1842, upon the following bill of exchange:

" Exchange for $3000.        " *Columbus, Geo.*, March 8, 1841.

Ninety days after date of the first exchange, second unpaid, pay to the order of Messrs. Kimbrough & Smith, three thousand dollars, value received, and charge the same to account of        Your ob't. s'ts.,

"KIMBROUGH & SMITH.

" To Messrs. De Peyster & Whitmarsh, New York."

(Endorsed, Kimbrough & Smith.)

" Rec'd June 12, 1841, from Messrs. De Peyster & Whitmarsh twelve hundred dollars on ac. of within bill of exchange, same as cash, on 9th of June.        "JOHN G. WINTER."

The declaration contained five counts. The first and second, counted specially upon a letter of credit given by De Peyster & Whitmarsh to Kimbrough & Smith. The third count was upon an acceptance of the bill of exchange. The fourth and fifth were the common money counts.

The defendants demurred to the first and second counts, and took issue upon the other three. Judgment was rendered to the defendants upon demurrer. The issues of fact were then tried before Vanderpoel, Justice, November term, 1843. Upon an order of discovery, the defendants produced in evidence, sworn copies from their books and papers, among others, the following letters, which were relied upon by the plaintiff as constituting De Peyster & Whitmarsh and Kimbrough & Smith, special co-partners:

" NEW YORK, 31st Oct. 1840.

" Messrs. De Peyster & Whitmarsh : Gents.—On the 19th instant we drew on you, 4 months date, under guarantee of Thos. R. Smith, Esq. for twenty-five hundred dollars ; before maturity of this draft you will receive either a check or consignment of cotton, to cover the amount.

" It is our intention to consign to you here, or to your order in Liverpool, all such cottons as we may control for shipment to either port, and to use our exertions to make such shipments as large as possible. For the promotion of this object we propose to make advances on Georgia or Florida, to the extent of three quarters of the fair market value of such cottons, and to draw on you at not less than sixty days sight, for the amount of such advances, forwarding at the same time, either river or ship bills, lading and invoice. We further propose to make occasional purchases of small lots of cotton on joint account with you, when such lots offer at prices which, in our opinion, may be paid without risk of loss ; for the amount of which we also propose to draw as above.

" In cases of advances we propose to divide equally all profit in shape of commission or exchange. In that of purchase, each party to charge the usual commission and the profit or loss to be equally divided. It is understood that all shipments shall be covered by open policy in this city. " Very Respectfully, " KIMBROUGH & SMITH.

" No advances to be made on shipments for Liverpool, except the vessel is ready to receive cargo."

" NEW YORK, November 3d, 1840.

" Messrs. Kimbrough & Smith: Gents. We have to acknowledge your communication of yesterday, and beg to add that our views agree with yours, except with regard to the insurance, which we shall expect to effect here on all property against which drafts are to be accepted by us. Having already so fully and freely exchanged our views and wishes, as to your operations with us, we have now only to ask your keeping us fully advised of any and all purchases, and of shipments either to Liverpool or this plcce ; and especially of the drafts you are drawing, and on what account. In furtherance of the above, we shall duly honor your drafts at not less than sixty days, to the extent of twenty thousand dollars, provided the same be drawn before the 1st June next.

" Very Respectfully, " DE PEYSTER & WHITMARSH."

A number of letters were then introduced, as evidence, from Kimbrough & Smith, to the defendants advising them of various shipments of cotton, drafts drawn, &c., up to the time of the draft in suit. The following is an extract of a letter dated Columbus, 7th March, 1841, from Kimbrough & Smith to the defendants, in relation to the draft in question, to wit: " We also make further draft at 90 days' date, for $3000, making the amt. for which we draw on the 200 bales as per statement below ; all which please honor.

" Very Respectfully, " KIMBROUGH & SMITH."

This draft was protested, for non-acceptance.

The plaintiff next offered in evidence the examination of Isaac Prall, taken under a commission, to prove the negotiation of the draft to the plaintiff. This testimony is important, as showing the point upon which the whole case was finally decided. To the first interrogatory, he stated (substantially) that he was twenty-eight years of age; resided at Columbus, Georgia; his occupation was clerk. Knew the plaintiff; did not know defendants. To the second interrogatory, he answered (substantially) that he knew the draft in suit; that it was drawn on the 8th March, 1841, in Columbus, Ga., by G. W. Smith, of the firm of Kimbrough & Smith, and another bill was drawn the same day for the same amount as a duplicate. To the third interrogatory, he answered as follows: "he saith the said bill was negotiated *to Messrs. Davis & Plume*, their brokers, of the city of Columbus, by the payees thereof, on or before the 5th day of March 1841, in the city of Columbus, for and in consideration of the amount of money expressed on the face thereof, less thirty days' interest at 8 per cent. per annum. The same was endorsed by G. W. Smith, in the name of Kimbrough & Smith." To the fourth interrogatory, he answered (substantially) that the bill was taken and received upon the exhibition of a letter of credit, containing an agreement in relation to bills to be drawn by Kimbrough & Smith on the defendants; he could not produce the letter; it purported to be written by the defendants; was not acquainted with their handwriting, &c. To the fifth interrogatory he answered as follows: "he saith the said bill was negotiated *to the plaintiff* through *Messrs. Davis & Plume*, who had his funds for that use, on the 8th March, 1841, for the amount expressed in said bill, adding one per cent. prem." The remainder of the answer related to the contents of the letter of credit of the defendants. To the sixth interrogatory he answered, that the purpose of Kimbrough & Smith in negotiating the draft, was to raise money, which he believes was invested in cotton. To the seventh interrogatory he answerd, that Kimbrough & Smith made shipments of cotton to Apalachicola, to be reshipped to defendants at New York, to meet this bill and others, &c.

These answers contain the substance of Prall's testimony, upon direct interrogatories, bearing upon the point in the case.

The defendant's counsel then read his examination on the cross-interrogatories. First, answered, that he was not interested. Second: the answers were made upon his own knowledge of the facts stated. Third: knew there was such a draft; had it in his possession as the book-keeper of *Davis & Plume*. Fourth: "he had fully answered this question, but would repeat, *the said bill was sold to or contracted for to Messrs. Davis*

& *Plume*, by G. W. Smith, for the amount expressed on the face, less 30 days' interest off at 8 1-2 per cent. per annum, for money for the purpose of buying or paying for cotton already purchased." Fifth and sixth: he had already answered in the direct interrogatories. Seventh: he knew of no authority given to the persons who took the bill for plaintiff's account, than that they were acting as his general agents. Eighth: "*the said bill was first purchased from G. W. Smith with the money of Davis & Plume, the plaintiff did have money in the hands of Davis & Plume, at the time of the negotiation to the amount of $7000, the money placed in their hands prior to the drawing of said bill, to be invested in northern exchange.*" Ninth: the plaintiff had not to his knowledge claimed, nor did not then claim of the persons referred to in the fifth direct interrogatory the amount of the said draft, or any part thereof, nor did he hold them liable. The answers to the remainder of the cross-interrogatories were principally in relation to the letter of credit, and the buying and shipping cotton by Kimbrough & Smith to the defendants.

The defendants moved for a non-suit, which was denied, and they excepted:—the judge intimating his intention to reserve all the questions for the consideration of the court. The defendants then called a witness, a book-keeper of the defendants, in 1841, and proved the payment endorsed on the draft ($1200,) which was paid to plaintiff by the defendants as all the proceeds of sales on account of Kimbrough & Smith of which they were possessed up to that time. That the draft was presented for acceptance to defendants and protested for non-acceptance. It was afterwards presented for payment, the day after it was due.

The defendants' counsel requested the judge to charge—That the plaintiff could not recover upon the bill as an accepted bill. 1st. The letter of credit was not an unconditional promise to accept under the statutes. 2. The terms upon which the defendants agreed to accept, had not been complied with; the defendants were sureties and the plaintiff was bound to show a strict compliance with those terms. 3. The drawers and drawees of the bill were not partners, nor in any manner jointly interested in the drawing thereof; but even if they were, still, the mere drawing of the bill was not an acceptance thereof. 4. There was no condition annexed to the consignment, nor any directions given as to paying the bill out of the proceeds thereof, which could by the receipt of cotton in any manner constitute an acceptance of the bill.

That the plaintiff was not entitled to recover under the common counts of his declaration, even though there was a partnership between the defendants and Kimbrough & Smith, because, 1. The plaintiff never lent

and advanced any money to the defendants nor to Kimbrough & Smith, for their use. The plaintiff's dealings were entirely with Davis & Plume, the endorsers and holders of the bill, and in no way with Kimbrough & Smith; the plaintiff obtained the bill by discounting the same. 2. The bill was a general bill, and was at most a mere equitable assignment of the moneys in the defendants' hands, belonging to the drawers; it did not assign the cotton, nor the proceeds thereof, so as to give the plaintiff or other holder of the bill a right of action against the defendants for money had and received.

The court charged, that by the letters between Kimbrough & Smith, of October 31, 1840, and November 3, 1840, which, by the order made on the affidavit for discovery, appeared to apply to each other, the defendants and Kimbrough & Smith became jointly interested as co-partners in the consignments of cotton therein contemplated to be made, as to advances thereon or joint purchasers thereof, and were liable as such for the acts of each other in the scope of that special co-partnership. That the defendants were apprized by the letters of Kimbrough & Smith to them, of March 5, 6 and 7, of the terms on which the consignments therein mentioned were made to them, and of advances by bills drawn on the defendants by Kimbrough & Smith, including the bill in question; and that by receiving the said consignments and selling the same after such notice, they had in law adopted the same as a co-partnership transaction; and if the jury should find in fact that the money for which the bill in evidence was given was applied to the advance on or purchase of the cotton which was so consigned, or to the repayment of such advance or purchase, and was the plaintiff's money, then the defendants were liable in this action under the issues joined between the parties, and the plaintiff would be entitled to recover the amount of the bill, crediting the payment thereon with interest from the time it fell due.

Defendants' counsel excepted to each and every part, and the whole of the charge. The jury rendered a verdict for the plaintiff of $2230. In November term, 1844, the court, on argument of the bill of exceptions, denied a new trial. The defendants carried the case to the Supreme Court, where, in November term, 1847, in the first judicial district, the judgment of the Superior Court was affirmed. No written opinion was given by the Supreme Court.

M. S. BIDWELL, *for plaintiffs in error.*

DANIEL LORD, *for defendants in error.*

By the Court, JEWETT, Ch. J.—It was agreed by the counsel on the argument that, waiving all other questions made by the bill of excep-

tions, the judgment of the court below could not be sustained unless upon the ground that the plaintiff gave sufficient evidence to submit to the jury, to find that the defendants and Kimbrough & Smith became jointly interested as co-partners in the consignments of cotton contemplated to be made by the latter to the former as described in the letter of Kimbrough & Smith to the defendants, under date the 31st day of October, 1840, and the letter of the defendants to Kimbrough & Smith in answer, dated 3d November, 1840, and that the money for which the bill of exchange for $3000, dated 8th March, 1841, was given, was the plaintiff's, and was applied to the advance on, or for the purchase of cotton so consigned by Kimbrough & Smith to the defendants, or to the repayment of such advance or purchase.

As regards the alleged partnership between the firm of the defendants and Kimbrough & Smith in respect to the purchase and consignment of the cotton, I am of the opinion that the evidence was sufficient to go to the jury to find that fact.

The only evidence given to show that the money for which the bill of exchange was drawn was the plaintiff's, is the testimony of Isaac Prall, taken under a commission at the instance of the plaintiff. Prall was, at the time of the transaction, book-keeper of Davis & Plume, brokers in the city of Columbus, Georgia, the place of residence of Kimbrough & Smith. This testimony shows that the bill of exchange in question was actually drawn on the eighth day of March, 1841, at Columbus, by Smith, one of the firm of Kimbrough & Smith, and by him on that day delivered to Davis & Plume, from whom he then received the amount for which it was drawn, less thirty days' interest at eight per cent., having previously on the fifth of that month been negotiated by Kimbrough & Smith to Davis & Plume. Whether the money which Kimbrough & Smith received of Davis & Plume was in fact the money of the plaintiff and advanced for the bill by them as his agents, is not affirmatively shown by the testimony of the witness. It is true, that in answer to the fifth direct interrogatory, the witness testified that said bill was negotiated to the *plaintiff* through Davis & Plume, who had his funds for that use, on the eighth day of March, 1841, for the amount expressed in said bill, adding one per cent. premium. But the witness in answer to the fourth cross-interrogatory says, " the said bill was sold to, or contracted for to Messrs. *Davis & Plume* by G. W. Smith, for the amount expressed on the face, less thirty days' interest off at 8 per cent. per annum. And again in his answer to the eighth cross-interrogatory, he testified that " the said bill was *first* purchased from G. W. Smith with *the money of Davis & Plume.*"

He, however, adds that "the plaintiff did have money in the hands of Davis & Plume, at the time of the negotiation to the amount of over seven thousand dollars, the money was placed in their hands prior to the drawing of said bill to be invested in northern exchange."

In my opinion, the testimony of this witness does not amount to *any evidence* of the fact, incumbent upon the plaintiff to prove, that the money paid for the bill, by Davis & Plume, was the plaintiff's; and on that ground the Superior Court erred in refusing to non-suit the plaintiff and in submitting to the jury to find that fact from the evidence so given. This conclusion makes it unnecessary to discuss the various other questions raised by a bill of exceptions. The judgments should be reversed and a *venire de novo* awarded by the Superior Court of the city of New York. Costs to abide the event.